**STATE v MILLER**

Ohio Appeal, 2nd Dist, Franklin Co

No 3223. Decided Dec 14, 1940

340

Thomas J. Herbert, Attorney General, Columbus; Clemens R. Frank, Asst. Atty. Gen'l., Columbus, and Herbert K. Ames, Asst. Atty. Gen'l., Columbus, for plaintiff-appellant.

Joseph McGhee, Columbus, for defendant-appellee.

## OPINION

By GEIGER, J.

This case is before the Court on appeal from the judgment of the Court below on questions of law. There are two transcripts separately filed, one on January 11, 1940, and the second on March 12, 1940, each relating to some procedure in the original case in the Court below.

The petition in the name of the State of Ohio as plaintiff was filed on May 2, 1939, and for a cause of action says that the State of Ohio has a legal estate in and is entitled to the immediate possession of certain real estate therein described, and that the defendant is unlawfully keeping plaintiff out of possession. Plaintiff prays judgment for possession of the premises.

A demurrer was filed to this petition which was overruled. The defendant filed an answer setting up a general denial and at a subsequent date filed an amended and supplemental answer in which it is recited that sometime prior to the 14th day of February, 1939, he applied to the Superintendent of Public Works for a lease on certain unused floor space in a building which the State holds under a lease from the Ford Motor Company, for the purpose of establishing a cafeteria restaurant therein; that by the terms of the Ford lease the State is authorized to sublet a portion of said premises for the operation of a cafeteria; that previous to said date and by the consent of the Unemployment Compensation Commission and the Superintendent of Public Works, he had installed a cafeteria and expended for equipment large sums of money.

It is further stated that upon making said application to the Superintendent of Public Works he was directed to obtain a lease from the Ohio Unemployment Compensation Commission, and that in pursuance thereof on the 14th of February such Commission entered into a written lease whereby it leased the premises to the defendant for a period of four years and eleven months for the purpose of operating a cafeteria and concession stand, for a monthly rental of $25.00; that by an enactment of §1346 GC, the Unemployment Compensation Commission was reorganized, and thereafter defendant was ordered by the administrator of said Commission to vacate, which defendant refused to do, and that thereupon the State of Ohio, at the direction of the administrator of such Commission, filed the petition herein.

It is further stated that prior to the filing of this action he had made application to the Superintendent of Public Works for a lease, and that subsequent to the filing on the 31st day of October, 1939, the State, acting through the Superintendent of Public Works, entered into a written lease for a period ending the 30th of October, 1943, for the purpose of operating a cafeteria and concession stand; that at all times since the occupancy of the building by the Unemployment Commission the premises have been occupied by the

defendant for the purpose of operating a cafeteria.

To this answer a reply was filed in which it is alleged that the defendant pretended to enter into a written lease with the Unemployment Commission on the 14th of February, 1939; that after the Unemployment Commission was reorganized by §1346, the administrator of the Bureau of Unemployment Compensation ordered the defendant to vacate, and upon refusal, suit was brought.

For further reply the plaintiff says that the pretended lease is void for the reason that it does not conform with the law.

For a further reply plaintiff states that a second pretended lease was pretended to be entered into between the Director of Public Works whereby the State purported to lease to tne defendant the premises described in the petition; that this latter lease is likewise void in that it was not made in conformity with the law.

Upon hearing the Court found from the evidence that the lease of the defendant is a valid lease, and that the defendant is in lawful possession of the premises, and that the petition should be dismissed.

A motion for new trial was filed and overruled and notice of appeal given.

The Court below rendered an opinion supporting its decision in which he restated the facts with some sidelights which indicated that the administration having changed, it was the purpose of the then new administration to secure the premises leased to Miller, for the accommodation of another party who is at present occupying space on the fourth floor. The Court concludes that in executing the second lease the Superintendent was but making legally effective what the former Commissioners had attempted to do, stating that they had determined that space was not needed by the Department, and in the judgment of the Court it is still not needed so urgently as to prompt a court of equity to deprive defendant of a three thousand dollar investment in reliance upon the action of State officials, so long as other space in the building is available and can be used for the storage of furniture, which is the use to which the Bureau now asserts it intends to put said space in the event of its being vacated.

The appellant has stated in his brief that there are two questions involved in this matter:

"1st: Can a Department of State, having no legal estate in certain real estate and endowed with no statutory authority to dispose of realty in any way, grant a valid lease to apportion such realty?

"2nd: May the Director of Public Works lease property under the control of the state government needed by the Department of State for governmental purposes?"

--

There appears to be no question that the first lease had no validity for the reason that the Unemployment Commission. neither before nor after its reorganization, had authority to lease the premises or any part thereof. The serious question is whether or not the second lease made by the Superintendent of Public Works, under which defendant now claims to hold the property, is a valid lease, as held by the court below. The applicable statute is §154-40 GC, and particularly ¶9, and §1346-5 GC. Section 154-40 provides in substance that the Department of Public Works shall have all powers and perform all duties vested in the Superintendent of Public Works and the State Building Commission. Paragraph 9 empowers that Department, "To lease unproductive and unused lands or other property under the control of the State government, or any department, office or institution thereof, * * *."

The two leases in question are attached to the bill of exceptions, being for the same premises and on substantially the same terms. In the first, the Ohio Unemployment Compensation Commission is recited as the lessor, and the lease is signed on the 14th of February, 1939, by such Commission through proper officials. The second

lease made on the 31st day of October, 1939, purports to be between the State of Ohio, acting through the Superintendent of Public Works as Director of said Department, as lessor, and Miller, as leasee, and recites that, whereas the State holds under lease from the Ford Company certain premises, and that said lease provides that the State may sublet space in said premises for the purpose of establishing a cafeteria; and whereas, the leasee has applied to the Superintendent for a lease of floor space for cafeteria purposes; and whereas the Superintendent of Public Works, as Director of said Department, having considered the application, resolved to lease the floor space for the remainder of the term of said lease, does lease it to Miller under the conditions named. This lease is signed by the State of Ohio, Department of Public Works, Carl G. Wahl, Superintendent of Public Works, as Director thereof, acting under authority of §154-40, ¶9, and under authority otherwise conferred upon him by law.

It is urged by the State that this lease made by the Director is void because it does not comply with the law.

The question before us is whether or not under Paragraph 9 the Department of Public Works has power to sublet as "unproductive and unused land or other property" a part of a building which in its entirety is leased from the owner for state purposes in connection with the Department, with the reservation that a part may be used for cafeteria purposes, on the ground that it is "unproductive and unused lands or other property."

The claim is made that at the time of the lease there was an immediate demand for the space covered thereby, and that therefore the Department of Public Works had no right to lease it for a long term of years, even though at the particular moment of the writing of the lease it was occupied by the defendant as a cafeteria under the provisions of the former invalid lease.

The issues made require a careful examination of the testimony as disclosed by the bill of exceptions. We will not do more than recite the substance of the testimony.

The first witness, W. P. Searle, was called on behalf of the plaintiff for cross-examination. He is administrator of the Bureau of Unemployment Compensation, and states that one of his duties is supervision over the building in an administrative capacity; that the Director of Public Works, Mr. Wahl, did not consult him prior to the giving of the lease of October 31, but that he consulted Mr. Wahl. He states that as Building Supervisor he needs extra space in the Unemployment Building, for store room purposes; that prior to the filing of the suit he stated to Mr. Miller that he wished additional space in the basement now occupied by the restaurant, and offered him the space on the fourth floor, now occupied by the Zarnas Restaurant, but that Miller rejected the offer on the ground that the cost of moving the restaurant would be too high due to the fact that he had put in electrical equipment; that at the present time he is not willing to allow Mr. Miller to occupy the space on the fourth floor as he had turned the offer down and the space was given to another party. The authority to give it to the other party was one of the duties vested in him as administrator, he asserts.

He states that he could not store furniture in the space occupied on the 4th floor for reasons that he recites, which are not impressive. The reason for the required use of the space is that the research department of the Social Security Board of Washington estimated that 400,000 claims would be received in the month of January, and equipment was bought to accommodate 4000 employees, but upon the opening of the office it was found that the anticipated requirements were greatly over estimated, and the office staff required was much below that estimated and for which equipment was purchased by the federal government. and is now located in various points in Ohio, but must be stored in that building.

Mr. Miller, the defendant, testified that he opened his restaurant in the Unemployment Building at 33 North Third Street, in July, 1938, and stayed there until he moved with the Department to its present location where he occupies about 3900 square feet. He states that in February, 1939, he was informed that they were going to try to dispossess him.

Mr. Atkinson, the new administrator, told him that he was going to have some "fellows" who wanted to buy the place, take it over, and he would send them around, after which Mr. Zarnas came, accompanied by an influential politician. He made an offer of the price at which he would sell, but this was refused, and thereupon he was informed by the Superintendent that his right to sell beverages from a truck would be denied to him and his activities confined to the space he occupied. On April 10, 1939, he received a letter to this effect. These truck sales had been of advantage to him, being about 25% of his total sales. Since the time he was informed to stop selling, Zarnas, whose restaurant is now located on the fourth floor, has sold beverages to his exclusion. He was later advised that they would like to sell to another individual, but nothing followed from this. Other inconsequential conversation was recited.

On cross-examination Mr. Miller stated that on the first floor of the building 25% of the space is not occupied and that on the fourth floor not over 25% was occupied. Miller denies that those in charge ever offered him space on the fourth floor. Miller explains that there were offensive odors from cooking in the building, but that this has been corrected. Three leases were submitted, the two to Miller and the one from the Ford Company to the State of Ohio, the latter being dated 7th of October, 1938.

The second lease to Miller, dated the 31st of July, 1935, is between the State of Ohio, acting through the Superintendent of Public Works, and recites that the Director of said Department "having considered said application of

said lessee, duly resolved to lease said floor space hereinafter described", etc.

This is practically all the testimony in the case, and after hearing this evidence the Court found that the lease of the defendant was a valid lease and that defendant is in lawful possession of the premises in question, and that the petition should be dismissed. From this order the appeal is taken and it is for us to determine whether under the evidence and the law either of the leases is valid.

The State asserts that under §154-40, ¶9, the scope of the authority of the Superintendent of Public Works to lease property under the control of the State is expressly limited to "unused and unproductive property", and that if the property is needed for state purposes it may not be leased for private enterprise even by the Superintendent of Public Works, and that the proper person to determine whether the space is needed is the head of the Department concerned, being, in this instance, the administrator of the Bureau of Unemployment Compensation. It is asserted that this administrator long before the last lease had determined that the space was needed and that the Superintendent of Public Works made no effort to determine whether or not this was the fact; that had he made an investigation and his decision been in conflict with that of the administrator, the matter could have been referred to the Governor for decision under the provision of §1346-5 GC.

It is pointed out that the entire basement now occupied by the Department is used as storage space except that part occupied by the defendant, and that the basement is the logical place for storage for the reasons given; that the Bureau cannot be forced to utilize undesirable and inconvenient space to make room for private enterprise; that under the lease from the Ford Company the building in its entirety is to be used by the Bureau of Unemployment Compensation for its own purposes; and that only when a part is not used has the Superintendent of

Public Works authority to lease such "unused and unneeded space"; that the Bureau of Compensation is growing in personnel and can only extend into this space, and within the period of a year all storage space will be occupied. The State asserts that if the question of politics is involved the evidence discloses the fact that the lease of this space to the present tenant was but an endeavor to give to him a desirable position in the building before there was a change in administration authority, and that upon suit in ejectment being brought on account of the invalidity of the first lease, the second lease was made by the Superintendent of Public Works shortly before he left office due to change of administration. It is asserted by the State that it took the lease from the Ford Company for the sole use of the Unemployment Compensation Commission and under the terms of the lease no private enterprise can be tolerated when the space occupied is needed for the Department.

The State cites the pertinent sections already alluded to. Sec. 1346-5 refers to consolidations of the Bureau of Unemployment Compensation and provides that it shall be the duty of the administrator to afford the facilities of the Bureau and its personnel through other departments charged with similar duties. If the administrator and the officers of any other department are not able to agree upon a plan of cooperation, "the Governor shall determine the manner and extent to which such two departments shall cooperate and failure of an officer in charge of any department to follow the direction of the Governor shall be cause for removal."

This section is cited to show that the Superintendent of Public Works should have ascertained whether the Department of Unemployment agreed to this lease and if there was disagreement it should have been submitted to the governor for final determination.

We are not impressed with the claim that this section in reference to the Governor has anything to do with the issue here, but relates to matters more definitely alluded to in the section, and more important than the lease of space in a State building.

The defendant recites in his brief the facts involved in the testimony not in conflict with the foregoing recitation.

Miller asserts that the questions may be summed up as being whether or not in the light of all the testimony and the law, Miller has a valid lease on the premises as described in the petition. It is asserted that the Ford lease provides for the operation of a cafeteria; that the building is under the direction of the Department of Public Works, and that Miller obtained a lease upon the space for cafeteria purposes on February 15, 1939, and that owing to the location of the building and the number of employees, it was the duty of the State to provide that the employees might have a convenient place where food might be provided at a minimum cost, and that the establishment of the cafeteria was but a recognition of the fact that there should be such a place available to the employees.

It is asserted that whether the lease of February 15th is valid or invalid, it is of consequence in showing that in the judgment of the Unemployment Compensation Commission, as then constituted, the space leased was then unused and not contemplated for use for any other purpose, and that the location in the basement was evidence of that space being available for cafeteria purposes.

It is asserted that if the administrator, as he claims, had a right to lease Mr. Zarnas space on the fourth floor, then his predecessor had a right to lease Mr. Miller space in the basement. It is asserted that whether or not the lease of February to Miller was valid; that the last lease of October 31, was made by the Superintendent of Public Works acting under due authority, and that such lease is valid. It is asserted that while it is not contemplated by the statute that any property needed by the State could be leased so as to deprive the State of its use, that it is evident that it was necessary to install a cafeteria, and at the time the lease

was entered into it was definitely determined that such should be installed, and that at the time Miller first installed it, it was unused and unproductive. The defendant seeks to answer the claim of the State that Wahl made no investigation as to whether the space was needed and never consulted the Superintendent, that there is no evidence determining what Wahl actually did before he signed the lease, and that Wahl himself was not called as a witness in the case.

We think we have elaborated the matter sufficiently to disclose our reasons for arriving at the conclusion that the lease as made by ▮▮▮ Wahl was a valid lease under the authority granted to him by the statute; that the fact that he made the lease is sufficient evidence that he made the necessary preliminary investigation and as a result thereof determined that the space was "unproductive and unused lands or other property under the control of the state government."

While we do not give consideration to the matter, there seems to us to be evidence that upon the change of administration there was a purpose to dispossess Miller and give his space to another tenant, and that in order to prevent this the Superintendent of Public Works hastily made a new lease to Miller to cover the purported defect of the first lease.

However this may be, we arrive at our conclusion solely upon the law and the evidence, that the second lease is valid under authority granted to Wahl as the head of the Department of Public Works to make a lease, and that having made it, and there being no other attack upon it than that which is asserted by the State, that the lease is valid and that the judgment of the Court below should be affirmed.

HORNBECK, PJ. & BARNES, J., concur.